Opinion of the Court, by
Judge Mills.
THE main question in this suit, is the validity of the following entry, which the court below has sustained against an elder grant; and also, whether the survey set up was made by virtue of this entry, or another of the same quantity. The entry reads as follows:
“ April 25, 1780—Holt Richardson enters one thousand acres, in Kentucky, by virtue of a warrant for military service performed by him in the last war, in the fork of the first fork of Licking, to run up each fork for quantity.
The survey set up by the complainants below, as made upon this entry, recites on its face to be made *310 “by virtue of an entry made April 24th, 1780, on a military warrant No. 620.” The appellants accordingly produced another entry, corresponding with the survey in date, which reads thus:
If the junction of the Main & South Forks would fit the calls as well as the junction of Hinkston and Stoner, the entry would, on that account, be void.
The surveyor was required to express in his certificate the rights on which he executed a survey, and this seems to require him to state the entry ; and if he recites an entry by its date, &c. the party will be bound by his recital, unless a mistake is shown & accounted for.
“ April 24th, 1780—Holt Richardson enters one thousand acres, in Kentucky, by virtue of a warrant for military service performed by him in the last war, joining Ben. Johnson’s entry upon Licking; to begin on the upper side of his entry, and running up the creek for quantity.”
It is admitted by the parties, in the pleadings, that this last entry is situated a considerable distance from the land in controversy, and not interfering therewith. It is shown in the cause, that after progressing up the river Licking from its mouth, for many miles, there are no forks or branches, except some of inconsiderable magnitude, until you come to the mouth of the South Fork, which nearly divides the main stream, the South Fork being somewhat the smallest; that after progressing up the South Fork many miles further, that stream is again divided into two large streams, each about ten poles wide; that Licking, at the date of these entries, had its present name; that above the aforesaid junction, the South Fork was distinguished by the name of the South Fork, and the two streams which, by their junction, compose it, were known by the names of Stoner and Hinkston, and that the other fork was distinguished from the South Fork, by the term Bue-Lick Fork, or Main Licking; that the junction of these two streams was called, in common language, then, as it is now, “ Forks of Licking,” and the “ first fork of Licking,” and the junction of Hinkston and Stoner was usually designated by “ Forks of the South Fork of Licking.” Sundry witnesses, being asked where they would have surveyed this entry, answered, in the main forks of Licking, where it is claimed to exist.
It is contended by the appellants, that the junction of Hinkston and Stoner is the proper place for surveying this entry; and by the appellees, that the main fork is the proper place. Whatever names the different forks might be known by at the date of this entry, it is evident the locator did not know these names, or if he did, he meant not to use them; for, in locating the place now claimed, he could have readily said, in the language of the day, in the forks of Licking, or in *311 the main fork of Licking, or in the first fork of Licking, or at the mouth of the South Fork. If he intended the forks of the South Fork, he could have simply said, at the junction of Hinkston and Stoner, or in the fork of the South Fork of Licking. But he has abandoned all these well known names, except that of Licking itself, and intended to rely on description only, to point out the place. The names then attached to these two places, by reputation at that day, do not fortify this entry, nor enable us, in any degree, to ascertain which place he intended. If it be argued, that he would have said the junction of Hinkston and Stoner, or the fork of the South Fork of Licking, had he intended this place, it may be replied, that he would have said, in the forks of Licking; or, in the main fork of Licking, had he intended the latter place.
2 Marsh. 413.
The question then is, has he given us such accurate description, as to let us know which place he intended; or, in other words, is there any thing in the entry which with certainty points out one place, and not the other?
It may be assumed, with certainty, that the stream now called South Licking, was the first fork of Licking, as you ascend the stream, which could by nature and size deserve that appellation; and that this stream had this name by reputation at that day, is sufficiently established. Was there no main fork to this South Fork, to rival the place claimed, we might, with more plausibility, construe the words, “ fork of the first fork of Licking,” to mean the fork composed by this junction. Somewhat similar to this construction, has this court considered the calls in the entry of Halbert, &c. in the case of Haws’ heirs vs. Halbert, &c. and in other cases on the same entry. The words there are, “ at the junction of the fork of Hinkston’s fork, and the first fork emptying into Hinkston on the north side, below the mouth of Flat-Lick creek.” There, a fork or branch of Hinkston’s fork, and another fork emptying into Hinkston on the north side, could not join. Hence the words, “fork of Hinkston’s fork," were construed to mean the fork or branch named Hinkston’s fork. This construction is there adopted, to make good sense of the entry, and to fit it to the only object on the ground to which it could apply; and the facts existing on the ground, in that case, showed that there was a redundance of expression, which created the ambi *312 guity; but, in this case, there is no such difficulty, when applied to the facts on the ground. Every word may be literally true. There is a main and notorious fork of the first fork of Licking. We well know, that not only now, but at the date of making entries in this country, in common or vulgar language, the word, fork, when applied to streams, meant sometimes the point of junction between two water courses, and very often a stream itself, which was the branch of another. Thus we say, Floyd’s Fork, Beech Fork, Rolling Fork, Hinkston’s Fork. This language has incorporated itself, not only into our statutes, but also into our entry books. Numerous instances might be adduced, of entries, from the decisions of this court, where the word fork is understood to mean a stream, instead of the point of union between two streams. A different meaning attached to many entries using this term, would defeat them. In the first sense mentioned, we conceive the locator used the word fork, where it first occurs in this entry. He placed his land in a fork, that is, at the junction formed by the division of a larger stream; and that larger stream, in the second sense above defined, is designated by the first fork of Licking.
Hence we have come to the conclusion, that the junction of Hinkston and Stoner is by nature the fork of the first fork of Licking, where this entry ought to have been surveyed. Put the case, that this entry had been surveyed at that point, and that it was now in controversy there, with elder grants; could we say that the calls of the entry had not been complied with, and that it was not surveyed in the fork of the first fork of Licking; and that, to comply with its calls, it must be moved to the fork composed by the junction of the first fork with Main Licking itself? At all events, it could stand its ground equally well, at the spot where we have supposed it ought to be, as the place where it is surveyed; and if both places fit it equally well, it must be void for uncertainty.
But if we were even mistaken in this construction of the entry, we are not satisfied that the other point relied on by the appellants is untenable. The fact, that the recital of the entry by another date, is a mere mistake of the surveyor, does not so clearly appear in this record. If there was no such entry as was recited, the mistake might be presumed; but there is one which fits *313 in quantity and nature of warrant, and the number of the warrant is omitted in both entries. The testimony of the surveyor was taken, and rejected by the court below, on account of his interest. An exception was taken, which placed his two depositions again in the record. Without reviewing or deciding the question of the competence of his testimony, we have looked into it, and do not discover that he swears that he inserted the wrong entry by mistake. He is positive that he made but one survey, and he further states that he and his partners had bought both entries, before the date of the survey, and that they surveyed but one ; but which one, he does not state.
It has been urged, that this recital was inofficial; that the law did not require such recital, and of course that it proves nothing. We are not disposed to admit that such recital was inofficial. The law directs the surveyor to express “the nature of the warrant and rights on which the survey is made.” The entry is a “ right” which may well be included in these expressions. We would not say that an omission of a surveyor, to recite an entry by date or other description, would be fatal to a claim; but when he does so describe the entry, the party ought to be bound by it, unless the mistake is accounted for. On both grounds, therefore, we consider the claim of the appellees untenable.
The decree must be reversed with costs, and directions given to dissolve the injunction and dismiss the bill with costs.